**T. Kennedy Helm, IV (SBN 282319)**
**HELM LAW OFFICE, PC**
644 40th Street, Suite 305
Oakland, California 94609
T: (510) 350-7517
F: (510) 350-7359
email: kennedy@helmlawoffice.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARYL LEON PUGH, SR., individually and as successor in interest to Decedent Daryl Leon Pugh, Jr.; Plaintiff, <br><br> vs. <br><br> WELLPATH, LLC, a Delaware corporation; DINESH NAGAR, MD; DON PURCELL, MD; JOHN MAIKE, MFT; JORDAN ALARCON, RN; STEPHAN SOLATAN, RN; COUNTY OF SOLANO, a public entity; County of Solano Sheriff THOMAS A. FERRARA; and DOES 1–50, jointly and severally, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DAMAGES** |

Plaintiff by and through his attorney, HELM LAW OFFICE, PC for his Complaint against Defendants, states as follows:

## JURISDICTION AND VENUE

1. This is a civil-rights, wrongful-death, and survival action arising from the in-custody death of Daryl Leon Pugh, Jr., on or about March 26, 2022, in the Solano County Justice Detention Facility, in Fairfield, in the County of Solano, California. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because Plaintiff brings this case to obtain

compensatory and punitive damages for the deprivation, under color of state law, of the rights of citizens of the United States that are secured by the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988. This action is brought pursuant to the First and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of California.

2.  Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law.

## VENUE AND INTRADISTRICT ASSIGNMENT

3.  Pursuant to Civil Local Rule 3-2(d), this action is properly assigned to the San Francisco Division or the Oakland Division of the United States District Court for the Northern District of California.

4.  Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b) because a defendant resides in this district.

## PARTIES AND PROCEDURE

5.  Plaintiff DARYL LEON PUGH, SR. ("PUGH"), is and was at all times herein mentioned the father of Decedent Daryl Leon Pugh, Jr. ("DECEDENT") and a resident of the State of California. Plaintiff PUGH brings these claims individually for wrongful death and violation of his personal rights, and as successor in interest for his son, DECEDENT, pursuant to California Code of Civil Procedure § 377.11 and federal civil-rights laws, asserting survival claims under both state and federal law.

6.  Plaintiff PUGH brings these claims pursuant to California Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et seq.*, which provide for survival and wrongful-death actions. As set forth more specifically above, Plaintiff PUGH brings his claims both individually and on behalf of DECEDENT, on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil-rights law, and California law. Plaintiff PUGH also brings these claims as a Private Attorney General, to vindicate not only his rights, but others' civil rights of great importance.

7.   Defendant WELLPATH, LLC ("WELLPATH") is a Delaware corporation headquartered in Nashville, Tennessee. Defendant WELLPATH, one of the nation's largest for-profit correctional health-care providers, services about 394 county jails and community facilities, and more than 140 state and federal prisons in about 36 states. Defendant Solano County has contracted with Defendant WELLPATH and its precursor, California Forensic Medical Group, to provide medical care and mental-health care at its jails.

8.   Defendant DINESH NAGAR, MD ("NAGAR") was at all times herein mentioned a physician licensed to practice medicine in the State of California and an employee or agent of the County of Solano and an employee and agent of Defendant WELLPATH, working as the medical director of the jails owned and operated by Defendant County of Solano. At all material times, Defendant NAGAR was a policy-making official for WELLPATH and Defendant County of Solano. He is being sued in his individual capacity and he resides in Marin County, within this district.

9.   Defendant DON PURCELL, MD ("PURCELL") was at all times a licensed physician and an employee and agent of Defendant WELLPATH and the on-site and head psychiatrist overseeing the psychiatric care provided to County of Solano jail inmates, including DECEDENT, in the jails owned and operated by Defendant COUNTY, and for ensuring that DECEDNT was placed on appropriate suicide precautions or transferred for inpatient psychiatric care, and he was acting within the course and scope of that employment and under color of state law. He is being sued in his individual capacity.

10. Defendant JOHN MAIKE, MFT ("MAIKE"), at all times material was employed by WELLPATH, as a Marriage and Family Therapist. Defendant MAIKE was acting within the course and scope of that employment and under color of state law. Defendant MAIKE was not qualified, under California law and/or nationally accepted standards, to perform an unsupervised suicide-risk assessment or to act independently as a mental health care provider without supervision by a licensed health care provider as required by California law and the California Code of Regulations. Plaintiff PUGH is informed and believes and thereon alleges that

Defendants WELLPATH, NAGAR, and PURCELL allowed Defendant MAIKE to work without the required clinical supervision.

11. Defendant JORDAN ALARCON, RN ("ALARCON"), at all times material was employed by WELLPATH, as a Registered Nurse. Defendant ALARCON was acting within the course and scope of that employment and under color of state law and was not qualified, under California law and/or nationally accepted standards, to perform an unsupervised suicide-risk assessment or to act independently as a mental-health care provider without supervision by a licensed health care provider as required by California law and the California Code of Regulations. Plaintiff PUGH is informed and believes and thereon alleges that Defendants WELLPATH, NAGAR, and PURCELL allowed Defendant ALARCON to work without the required clinical supervision.

12. Defendant STEPHAN SOLATAN, RN ("SOLATAN") at all times material was employed by WELLPATH, as a Registered Nurse. Defendant SOLATAN was acting within the course and scope of that employment and under color of state law and was not qualified, under California law and/or nationally accepted standards, to perform an unsupervised suicide-risk assessment or to act independently as a mental-health care provider without supervision by a licensed health care provider as required by California law and the California Code of Regulations. Plaintiff PUGH is informed and believes and thereon alleges that Defendants WELLPATH, NAGAR, and PURCELL allowed Defendant SOLATAN to work without the required clinical supervision.

13. Defendant COUNTY OF SOLANO ("COUNTY") is a public entity, established by the laws and Constitution of the State of California, which owns, operates, manages, directs, and controls the Solano County Sheriff's Office ("SCSO"), and is the employer of the individual COUNTY Defendants, as well as certain DOE Defendants. Defendant COUNTY is and was responsible for ensuring the provision of emergency, medical, and mental-health services to all Justice Detention Facility inmates. Defendant COUNTY is responsible for ensuring that the basic human needs of individuals in its custody are met, and for ensuring that inmates are not at

risk of serious harm, including by providing appropriate funding, oversight, and corrective action to ensure adequate conditions. Defendant COUNTY is also responsible for ensuring that jail policies and practices do not violate inmates' constitutional rights or put them at risk of serious harm, including by suicide, because they are unable to properly care for themselves. Defendant COUNTY, by law, possesses the ultimate authority over and responsibility for the medical care, mental-health care, treatment, and physical safekeeping of all incarcerated persons at the Justice Detention Facility, including DECEDENT. Defendant COUNTY is and was at all relevant times mentioned herein responsible for the actions and/or inactions and the policies, procedures, and practices/customs of WELLPATH and its employees and/or agents. Pursuant to California Government Code § 815.2, the COUNTY is vicariously liable for the state-law torts of its employees and agents, including the individual Defendants herein.

14. Defendant THOMAS A. FERRARA ("FERRARA") at all material times was employed was employed by Defendant COUNTY as Sheriff-Coroner, and was acting within the course and scope of that employment. As Sheriff, Defendant FERRARA was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all SCSO custodial employees and/or agents. Defendant FERRARA, with the assistance of a small group of executive officers, is and was charged by law with the administration of the Justice Detention Facility. Defendant FERRARA also is and was responsible for the promulgation of policies and procedures and allowance of the practices/customs, pursuant to which the acts of the SCSO alleged herein were committed for the COUNTY, and at all material times, he was acting within the course and scope of that employment. Further, Defendant FERRARA was ultimately responsible for the provision of medical and mental-health care to inmates at the Justice Detention Facility, and all COUNTY and WELLPATH policies, procedures, and training related thereto. Defendant FERRARA is being sued in his individual capacity.

15. Despite Plaintiff PUGH's counsel's multiple requests for records, WELLPATH and COUNTY have not provided Plaintiff PUGH's counsel with requested documents and information concerning this incident, including complete medical and mental-health records,

custody records and records of any post-incident investigation performed by WELLPATH or the COUNTY. As a result, the true names and capacities of Defendants sued herein as DOES 1–50 ("DOE Defendants") are unknown to Plaintiff PUGH, who therefore sues said Defendants by such fictitious names. Plaintiff PUGH will seek leave to amend this Complaint to show their true names and capacities, when the same are ascertained.

16. DOE Defendants 1–30 were employees/agents of Defendant COUNTY and/or WELLPATH, and at all material times acted within the course and scope of that relationship.

17. DOE Defendants 31–50 were supervisorial personnel and policy-making officials for Defendant COUNTY and/or WELLPATH, and at all material times acted within the course and scope of that relationship.

18. Plaintiff PUGH is informed and believe, and thereon allege, that each of the Defendants sued herein was negligently, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to DECEDENT and Plaintiff PUGH.

19. Further, one or more DOE Defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including DOE Defendants.

20. Plaintiff PUGH is informed and believes, and thereon alleges, that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.

21. Plaintiff PUGH is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise, specifically alleged.

22. At all material times, each Defendant was jointly engaged in tortious activity, and was an integral participant in the events and violations of rights described herein, resulting in the deprivation of DECEDENT's and Plaintiff PUGH's constitutional rights and other harm.

23.  The acts and omissions of all Defendants, as set forth herein, were at all material times pursuant to the actual customs, policies, practices, and procedures of the COUNTY and WELLPATH as set forth herein.

24. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

25. Plaintiff PUGH timely and properly presented a tort claim with the COUNTY, pursuant to California Government Code § 910 *et seq*., and this action is timely filed within all applicable statutes of limitation.

26. This Complaint may be pleaded in the alternative, pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure.

## GENERAL ALLEGATIONS

27. Plaintiff realleges each and every paragraph in this Complaint, as though fully set forth here.

28. In 2022, five people died at the COUNTY's Jails, more than any year since 1998, according to the COUNTY and the California Department of Justice. On information and belief, these deaths were either accidental fentanyl overdoses or intentional (suicidal) fentanyl overdoses.

29. THE COUNTY lacks the drug screening, detection, and search policy—or it has failed, through deliberate indifference, to properly execute, supervise and enforce the policies that do exist—necessary to ensure the safety of people incarcerated there.

30. The COUNTY failed to train, or failed to adequately train, with deliberate indifference to the DECEDENT's and Plaintiff PUGH's rights, Jail staff to search for drugs in cells and prevent drugs from entering the Jail. The COUNTY Defendants knew that drugs routinely entered the Jail and that, on information and belief, people had previously died from obtaining drugs, including fentanyl, within the Jail. DECEDENT would not have died had COUNTY's Jail staff been adequately trained to prevent drugs from entering its facility, and to also search and locate drugs that had been successfully smuggled into the facility, which were being concealed in cells.

31. Plaintiff is informed and believes that drugs, including methamphetamines and opioids, including but not limited to fentanyl, enter the Solano County Jail despite and/or because of the COUNTY's drug search, drug screening, and drug detection policies, practices, and customs.

32. Plaintiff is informed and believes, and thereon alleges, that Defendant COUNTY, FERRARA, and DOES 1–50 possess and execute a drug screening, detection, and search policy that is so lacking in that it poses a direct threat to the constitutional rights of inmates and their families, including Decedent and Plaintiff. Plaintiff is further informed and believes that these policies are carried out with deliberate indifference to the constitutional rights of inmates and their families, including Decedent and Plaintiff, with full knowledge of the deprivation of rights occurring as a result.

33. Plaintiff is informed and believes that Defendants, and each of them, were not adequately trained on the proper procedures for screening inmates, staff, and other visitors for drugs and other contraband and that these failures to train directly caused the constitutional deprivations alleged herein. Plaintiff is informed and believes that Defendants had actual or constructive notice that this failure to train would lead to a deprivation of constitutional rights.

34. Plaintiff is informed and believes that drugs and other contraband are routinely smuggled into the Solano County Jail by inmates, staff, and other visitors as a result of Defendants' unconstitutional policies on drug screening, search, and detection. Plaintiff is informed and believes that these policies are purposely sub-standard as compared with policies in other institutions, and/or that Defendants knows these policies are sub-standard but chooses not to alter the policies and their implementation.

35. The COUNTY and WELLPATH also lack policies and practices for mental-health screening and tracking are inadequate. Defendant COUNTY and WELLPATH fail to adequately identify, track, and treat the mental-health problems of newly arriving inmates with psychiatric disabilities during the screening and intake process. Defendant COUNTY AND WELLPATH's failures to identify and initiate adequate mental-health treatment places inmates with psychiatric disabilities at a risk of serious harm, including suicide and death.

36. Defendant COUNTY has a custom of routinely failing to sufficiently observe inmates who have been identified as being at risk of suicide. Specifically, Defendant COUNTY lacks any policy or procedure for, and, thus, fails to provide, constant observation of inmates who are actively suicidal, including those that are either threatening to or engaging in the act of suicide.

37. Defendant COUNTY's policy for conducting "safety checks" is inadequate to ensure the safety of inmates with serious mental illness in restrictive housing. Defendant COUNTY has a policy requiring safety checks once every half-hour, but COUNTY Correctional Staff fail to follow this policy, and frequently fail to conduct appropriate checks at intermittent and unpredictable times. Defendant COUNTY's policy concerning the performance of "safety checks" is perfunctory and does not include direct visual observation that is sufficient to assess the inmate's well-being and behavior. Defendant COUNTY's policy of "safety checks" fails to use verbal interaction as a part of the "safety checks", even when visual observation of the inmate is obscured or circumstances otherwise demonstrate a reason for concern about the inmate's well-being and behavior. As a result, inmates housed in restrictive housing are put at an increased risk of harm.

38. Defendant COUNTY has knowledge of the substantial risk of harm caused by inadequate suicide prevention and treatment policies and practices at its jails, but has failed to take steps to prevent, or even to diminish, the harmful effects of these unlawful policies and practices. Defendant COUNTY is, thus, deliberately indifferent to the risk of harm to inmates created by the COUNTY's failure to operate a constitutionally adequate suicide-prevention and treatment program.

39. On or about October 25, 2021, DECEDENT was booked into the Solano County Jail as a pretrial detainee. DECEDENT had been booked into the Jail in 2020 and 2021. At intake into the jail, his WELLPATH records state that he was a "poor historian" who "responded 'no' to most questions." On October 28, 2021, Defendant NAGAR noted that DECEDENT made a "SI" or suicidal ideation; used meth on the streets; and was irritable and angry.

40. In 2020 and 2021, WELLPATH employees, including Defendants NAGAR and PURCELL, and COUNTY employees, documented DECEDENT's suicidal ideation and extensive and severe mental illness history in official County of Solano jail and medical records, including in electronic medical records databases, including CorEMR5. These records reveal that DECEDENT's active problem list included "Suicide History, Mental Health Patient, Serious Mental Illness (SMI), and Withdrawal History Problems" associated with methamphetamine abuse. DECEDENT took Zyprexa, an anti-psychotic medication, to treat his bipolar disorder, and he had been on Suicide Watch before. The records also showed that DECEDENT had been found incompetent to stand trial, having been hospitalized at Napa State Hospital in May 2006 and May 2019.

41. On November 11, 2021, DECEDENT was placed on suicide watch after stating that he was feeling suicidal. On information and belief, DECEDENT remained on suicide watch until February 5, 2022.

42. On February 6, 2022, Defendant SOLATAN noted that DECEDENT was "placed in a safety cell by mental health for suicidal ideations . . . Patient states he kept meth in his cell for 4 months and took them recently, and that he is now withdrawing from meth. Patient is hyperverbal and appears anxious." Defendant SOLATAN's "plan" was for "MH follow up, MD follow, psychiatrist follow up already set. Safety cell checks q 4 hours. Reassurance provided."

43. On February 8, 2022, DECEDENT was seen by "Psych Don Purcell" who scheduled no follow up. Defendant PURCELL knew, from seeing DECEDENT on 06/03/2020, of DECEDENT's long history of suicide attempts and antipsychotic medication. Nevertheless, Defendant PURCELL discharged DECEDENT from suicide watch and all suicide precautions.

44. On February 9, 2022, Defendant NAGAR saw DECEDENT, but failed to evaluate him. Defendant NAGAR knew about DECEDENT's serious mental-health needs, having seen him on suicide watch on November 1, 5, 12, and 22, 2021. Defendant NAGAR failed to prescribe appropriate medications for DECEDENT, failed to place him on suicide watch, failed to arrange for an immediate follow-up with a Psychiatrist or Psychologist, failed to order that DECEDENT

undergo a mental-status exam, and failed to arrange for DECEDENT to be examined by a mental health doctor. Rather, Defendant NAGAR marked DECEDENT as medically stable.

45. On February 12, 2022, DECEDENT had his "7 day f/u from 1056 Clearance" with Defendant ALARCON, who failed to competently examine DECEDENT.

46. On February 24, 2022, Defendant SOLATAN saw DECEDENT, and noted "Patient seen with Mental Health in his cell. Patient states he is worried about court, prison, and being moved around a lot."

47. On March 10, 17, 20, 22, and 24, 2022, Defendant MAIKE saw DECEDENT, who had asked to speak with mental health. Defendant failed to evaluate DECEDENT on any of these occasions.

48. On March 10, Defendant ALARCON saw DECEDENT, who had asked to speak with mental health. Defendant failed to evaluate DECEDENT.

49. On March 24, 2022, DECEDENT appeared in Solano County Superior Court as a pretrial detainee.

50. On March 26, 2022, at 3:46 p.m., DECEDENT requested a mental-health consult. Defendant ALARCON saw, but failed to evaluate, DECEDENT.

51. At no point did Defendant SOLATAN, MAIKE, ALARCON, PURCELL, or NAGAR carefully or adequately consult DECEDENT's medical and mental health records from his earlier incarcerations in County of Solano jail. failed to do anything to get DECEDENT appropriate medication, failed to take steps to set up a mental status examination for DECEDENT, and failed to take steps to place DECEDENT on suicide watch, though they had full access to DECEDENT's Solano County jail medical records in the CorEMR5 electronic database, showing that DECEDENT had an extensive history of mental illness, including diagnosed bi-polar disorder, and had expressed suicidal ideation, as recorded in the Solano County jail medical records.

52. On March 26, 2022, at 8:55 p.m. during security rounds, a DOE Defendant Correctional Officer saw DECEDENT alive for the last time.

53. Between 8:55 p.m. and 9:43 p.m., for forty-eight minutes, DOE Defendant Correctional Officers failed to perform any safety checks on DECEDENT, in violation of COUNTY policy.

54. At 9:43 p.m., a DOE Defendant Correctional Officer discovered DECEDENT lying in an abnormal position in Cell N-5, where he was housed alone. This DOE Defendant Correctional Officer called out to him, but DECEDENT did not respond.

55. When he was found, DECEDENT was "cold to the touch. There were no lividity. Rigor mortis was on the early onset."

56. Three rounds of Narcan were administered but were not effective.

57. A post-mortem blood sample of March 31, 2022 showed a Fentanyl concentration of "8.0 ng/mL." Reported postmortem serum concentrations of patients who have died from fentanyl overdoses range from 5–120 ng/ML. Fentanyl was the only drug in DECEDENT's body at the time of his death.

58. Over a year after his death, on June 29, 2023, a Napa County Sheriff-Coroner pathologist Dr. Joseph I. Cohen, MD, certified the amended cause of death as "Acute Fentanyl Intoxication."

59. By the actions and omissions described above, Defendants, acting under the color of state law in their individual capacities, deprived DECEDENT, as a pretrial detainee of the rights, privileges, and immunities secured by the Fourteenth Amendment by subjecting him, or through their deliberate indifference, allowing others to subject him, to delay and denial of access to medical and/or mental-health care for a serious, but treatable, medical or mental-health condition.

60. Defendants knew that DECEDENT's medical and/or mental-health condition was serious, but treatable, and knew or must have known that he required access and delivery to urgently needed medical and/or mental-health care; Defendants further had a duty to provide DECEDENT with reasonable security and safe, appropriate housing and monitoring to accommodate his mental-health condition.

61. Defendants ignored, delayed, or denied to DECEDENT urgently needed medical and mental-health care and treatment. As a result of the Defendants' deliberate indifference to

1  DECEDENT's need for medical care and/or mental-health treatment, Plaintiffs suffered damages
2  and deprivation of constitutional rights, as described herein.

3       62. At all material times, and alternatively, the actions and omissions of each Defendant were
4  intentional, wanton, and/or willful, conscience-shocking, reckless, malicious, deliberately
5  indifferent to DECEDENT's and Plaintiff PUGH's rights, done with actual malice, recklessness,
6  gross negligence, deliberate indifference, negligence, and/or were otherwise objectively
7  unreasonable.

8       63. As a direct and proximate result of each Defendants' acts and/or omissions, as set forth
9  above, Plaintiff PUGH sustained the following injuries and damages, past and future, including,
10 but not limited to:

11          a.    Wrongful death of DECEDENT, pursuant to California Code of Civil
12                Procedure § 377.60 *et seq*.;

13          b.    Medical expenses, pursuant to California Code of Civil Procedure §
                  377.20 *et seq*.;

14
15          c.    Coroner's fees, funeral, and burial expenses, pursuant to California Code
                  of Civil Procedure § 377.20 *et seq*.;

16
17          d.    Loss of support and familial relationships, including loss of love,
                  companionship, comfort, affection, society, services, solace, and moral
                  support;

18
19          e.    DECEDENT's loss of life, including loss of enjoyment of his life,
                  pursuant to federal civil-rights law;

20
21          f.    DECEDENT's pre-death, conscious pain and suffering, pursuant to
                  California law (Cal. Code Civ. Proc. § 377.34) and federal civil-rights
                  law;

22
23          g.    Plaintiff PUGH's loss of his relationship with DECEDENT, including
                  pain and suffering and the attendant emotional distress, pursuant to federal
                  civil rights law;

24
25          h.    All damages, penalties, costs, and attorneys' fees recoverable under 42
                  U.S.C. §§ 1983, 1988; California Civil Code §§ 52 and 52.1 *et seq*.;
26                California Code of Civil Procedure § 1021.5; and as otherwise allowed
                  under California and United States statutes, codes, and common law.
27

64. The conduct of Defendants was malicious, wanton, oppressive, and in reckless disregard for the rights and safety of DECEDENT, Plaintiff PUGH, and the public. Plaintiff PUGH is, therefore, entitled to an award of punitive damages against Defendants. Plaintiff PUGH does not seek punitive damages against Defendant COUNTY.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983)
### PLAINTIFFS AGAINST DEFENDANTS NAGAR, PURCELL, MAIKE, ALARCON, SOLATAN, AND DOES 1–30.

65. Plaintiff PUGH re-alleges and incorporates by reference each and every allegation contained in this Complaint, as though fully set forth here.

66. By the actions and omissions described above, pursuant to 42 U.S.C. § 1983, Defendants deprived Plaintiff PUGH and DECEDENT of the following well-settled constitutional rights that are protected by the First and Fourteenth Amendments to the U.S. Constitution:

   a. The right to be free from deliberate indifference to DECEDENT's serious medical needs while in custody and confined in jail as a pretrial detainee, as secured by the Fourteenth Amendment, including the right to a proper medical screening conducted to ensure that a medically appropriate protocol is initiated, and the right to direct-view safety checks sufficient to determine whether his presentation indicated the need for medical treatment, *Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021);

   b. The right to be free from wrongful government interference with familial relationships and Plaintiffs' and Decedent's right to companionship, society, and support, as secured by the First and Fourteenth Amendments.

67. Defendants' failure to intervene, prevent, or stop the constitutional violations by others, when Defendants were in a position to so intervene when such violations were occurring, also renders such Defendant(s) liable for these violations.

68. Defendants subjected Plaintiff PUGH and DECEDENT to their wrongful conduct, depriving Plaintiff PUGH and DECEDENT of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of

Plaintiff PUGH (individually and on behalf of DECEDENT) and others would be violated by their acts and/or omissions.

69. As a proximate result of the foregoing wrongful acts and/or omissions, Plaintiff PUGH and DECEDENT sustained injuries and damages, as set forth above, in ¶¶ 63–64. Plaintiff PUGH is, therefore, entitled to general and compensatory damages in an amount to be proven at trial.

70. In committing the acts alleged above, Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the rights, safety, and emotional well-being of Plaintiff PUGH and DECEDENT, and by reason thereof, Plaintiff PUGH is entitled to punitive damages and penalties allowable under 42 U.S.C. § 1983, California Code of Civil Procedure §§ 377.20 et seq, and other state and federal law against the individual Defendants; no punitive damages are sought directly against the COUNTY.

71. Plaintiff PUGH is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable California codes and laws.

**SECOND CAUSE OF ACTION**
**(42 U.S.C. § 1983 – *Monell* and Supervisory Liability)**
**PLAINTIFFS AGAINST DEFENDANTS WELLPATH, NAGAR, PURCELL, COUNTY, FERRARA, AND DOES 31–50**

72. Plaintiff PUGH re-alleges and incorporates by reference each and every allegation contained in this Complaint, as though fully set forth herein.

73. As supervisors, Defendants FERRARA, NAGAR, PURCELL, and DOES 31–50 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights and serious medical needs of DECEDENT. Each of these supervising Defendants either directed her or his subordinates in conduct that violated DECEDENT's rights, OR set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive DECEDENT of rights, OR knew his or her subordinates were engaging in acts likely to deprive DECEDENT of rights

1  and failed to act to prevent his or her subordinates from engaging in such conduct, OR
2  disregarded the consequence of a known or obvious training deficiency that she or he must have
3  known would cause subordinates to violate DECEDENT's rights, and in fact did cause the
4  violation of DECEDENT's rights. (See, Ninth Circuit Model Civil Jury Instruction 9.4).
5  Furthermore, each of these supervising Defendants is liable by failing to intervene in their
6  subordinates' apparent violations of DECEDENT's rights.

7  74. On information and belief, no adequate Suicide Risk Assessment tool ("SRA") was
8  implemented in COUNTY's jail prior to the DECEDENT's suicide, which was needed by
9  COUNTY to both appropriately initiate suicide precautions in COUNTY's jail and appropriately
10  discharge inmates from suicide precautions. The SRA either was never promulgated, never
11  implemented, has not been enforced, is inadequate, or was not followed with respect to
12  DECEDENT.

13  75. Prior to DECEDENT's incarceration, on information and belief, the COUNTY and
14  WELLPATH and its policymakers and administrators, including Defendants FERRARA,
15  NAGAR, and PURCELL, were aware of the need to have a policy requiring precautions to be
16  initiated under the proper circumstances and permitting jail staff to discontinue suicide
17  precautions only after conducting an appropriate assessment, for jail medical staff to perform an
18  appropriate assessment before the scheduled release of an inmate on suicide precautions, for
19  inmates discharged from suicide precautions to get an appropriate treatment plan and follow-up
20  assessments by staff, and that COUNTY staff needed to be trained on the Suicide Risk
21  Assessment form and development of treatment plans, with the training to be developed for new
22  and existing COUNTY employees, along with regular refresher training. Additionally, the
23  COUNTY and its respective policymakers and administrators were aware that this training
24  needed to include avoiding negative attitudes, the impact of correctional environments on
25  suicidal behavior, predisposing factors, high-risk time periods, warning signs, and a suicide
26  prevention policy, inter alia.

27  76. On information and belief, despite this knowledge that the COUNTY had, at least as of

prior to the DECEDENT's incarceration, and in fact had much earlier, they failed to implement and/or enforce and/or properly execute these drastically needed suicide prevention policies, which failure was a moving force and proximate cause of the deprivations of Plaintiff PUGH's and DECEDENT's clearly established and well-settled constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above in the First Cause of Action.

77. Additionally, the COUNTY and WELLPATH failed to have an appropriate policy that would have required its jail staff—including both medical and non-medical personnel—to be familiar with the medical history and medical needs of inmates, as evidenced in the instant case, and as evidenced in *Shaheed v. County of Solano, et al*. (Case No. 2:21-cv-01109-JAM-DB) and *LeMoon v. California Forensic Medical Group, et al.* (Case No. 4:20-cv-02252-PJH).

78. Plaintiff PUGH alleges, upon information and belief, the unconstitutional actions and/or omissions of the COUNTY and WELLPATH Defendants were pursuant to the following customs, policies, practices and/or procedures of the COUNTY and/or WELLPATH, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officials for the COUNTY and/or WELLPATH:

    a. To deny inmates at the COUNTY'S jail access to appropriate, competent, and necessary care for serious medical and psychiatric needs, including, but not limited to, by failing to require that all medical/psychiatric staff and supervisors at the jail be properly trained, supervised, credentialed, and licensed as required by law;

    b. To fail to implement and/or enforce and/or properly execute drastically needed policies to ensure the safety of individuals that are booked for drug related offenses and/or who have a history of drug use and/or mental health issues, about whom the COUNTY's employees receive reports that such individuals are unwell and need to be the subject of wellness checks and medically examined, and with respect to whom the COUNTY's employees make assurances to concerned family members that wellness checks will be performed, but then such COUNTY employees simply disregard the report, which policies COUNTY officials knew and/or had reason to know were needed;

    c. To fail to have an adequate Suicide Risk Assessment ("SRA") tool in place, by either not adopting or implementing an adequate SRA;

    d. To fail to implement and/or enforce and/or properly execute drastically needed

suicide prevention policies, which COUNTY officials knew and/or had reason to know were needed;

e. To fail to ensure that suicide precautions are not lifted without a proper assessment and without implementing reasonable prevention precautions, as well as formulating and executing a safety plan for the individual;

f. To fail to ensure an individualized treatment plan is formulated and followed before suicide prevention precautions are lifted;

g. To fail to ensure an individualized safety plan is formulated, documented, and followed prior to the lifting of suicide safety precautions;

h. To fail to properly classify, house, and/or monitor inmates suffering from mental-health conditions and disabilities, including placement on suicide watch with proper suicide precautions, including failing to consider in any way the clear and obvious danger of placing inmates at risk of suicide in cells with means to hang and injure themselves (including bunk beds, horizontal bars, clothing, and ligature materials) and without the frequent, logged observations required by law;

i. To allow, encourage, and require unlicensed, inadequately trained, and inadequately supervised medical staff to make decisions to place jail inmates on, and remove inmates from, suicide watch in direct violation of applicable law and standards, including permitting unlicensed and/or untrained medical staff to make the decision of whether to place severely mentally ill inmates on or remove from suicide watch without a reasonable, appropriate, and lawful basis for doing so;

j. To fail to institute proper procedures and training to coordinate inmate assessment, placement, suicide watch decisions, transfers to psychiatric facilities, and care with COUNTY medical and mental-health staff, jail physicians, jail psychiatrists, court, and/or jail corrections staff, where there was an obvious need for such to prevent the type of tragedy that occurred in this case;

k. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures for handling, housing, and caring for mentally ill and/or emotionally disturbed inmates at the COUNTY Jail, including alternatives to placing such ill and disturbed inmates in need of treatment in solitary confinement or segregation cells that are intended and used to punish inmates, with the obvious consequence that the mental health needs of such inmates remain unaddressed and are in fact aggravated and increased by such punitive treatment;

l. To provide safe and appropriate jail custody, including reasonable classification, monitoring, and housing, including placing inmates on suicide watch with proper suicide precautions, and preventing access to physical conditions and items that could foreseeably be used for suicide;

m.  To implement and/or enforce and/or properly execute drastically needed suicide-prevention policies, which COUNTY officials knew and/or had reason to know were needed;

n.  To properly classify, house, and/or monitor inmates suffering from mental-health disabilities, including placement on suicide watch with proper suicide precautions, and to not remove an inmate from a 5150 hold without a proper suicide risk assessment, as well as considering the clear and obvious danger of placing inmates at risk of suicide in cells with means to hang and injure themselves (including bunk beds, horizontal bars, clothing, and ligature materials) and without the frequent, logged observations required by law;

o.  To treat "Priority 1" tasks as routine;

p.  To fail to have a policy requiring staff to review an inmate's prior medical record;

q.  To fail to implement and/or enforce and/or properly execute an appropriate drug screening, detection, and search policy necessary to ensure the safety of people incarcerated in the Solano County Jail;

r.  To fail to properly assess, classify, and house detainees that cannot care for their own safety and require heightened supervision and more frequent safety checks;

s.  To fail to train staff that if they see an inmate prone on the ground in their cell and unresponsive, this is an urgent situation and medical attention needs to be summoned Code-3, immediately;

t.  To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint, when the need for such was obvious, with deliberate indifference to the rights and safety of Plaintiffs Decedent, and the public, and in the face of an obvious need for such policies, procedures, and training programs;

79.  The above-described customs, policies, practices, and/or procedures of the COUNTY were a moving force and/or a proximate cause of the deprivations of Plaintiff PUGH's and DECEDENT's constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above in the First Cause of Action.

80.  On information and belief, the COUNTY and/or WELLPATH both conducted an investigation and review of this matter leading to the death of DECEDENT. The unconstitutional actions and/or omissions of the individually named Defendants, DOES 1–30, and other

COUNTY and/or WELLPATH personnel, as described above, were approved, tolerated, and/or ratified by policy making officials for the COUNTY and/or WELLPATH. Plaintiff PUGH is informed and believes, and thereupon alleges, the details of this incident have been revealed to the authorized policy makers within the COUNTY and/or WELLPATH, and that such policymakers have direct knowledge of the fact that DECEDENT was unlawfully denied necessary care for his serious medical needs due to their and their subordinates' misconduct and violations of DECEDENT's rights. Notwithstanding this knowledge, the authorized policymakers within the COUNTY and/or WELLPATH, have approved of the individually named Defendants' and DOES 1–30s' conduct and decisions in this matter, to the extent such individuals were under their supervision and oversight, and have made a deliberate, conscious, and affirmative choice to endorse and ratify such conduct and decisions, and the basis for them, which resulted in the death of DECEDENT. By so doing, the authorized policymakers within the COUNTY and/or WELLPATH have shown affirmative agreement with the conduct of individual Defendants and other employees/agents under their supervision, and have ratified the unconstitutional acts of these individual Defendants, employees, and agents.

81. The aforementioned customs, policies, practices, and procedures; the failure to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of individual Defendants were a moving force and/or a proximate cause of the deprivations of Plaintiff's and DECEDENT's clearly established and well-settled constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above in the First Cause of Action.

82. As a direct and proximate result of the foregoing unconstitutional actions, omissions, customs, polices, practices, and/or procedures of Defendants COUNTY, WELLPATH, NAGAR, PURCELL, FERRARA and DOES 31–50, or the lack or inadequacy thereof, Plaintiff PUGH sustained serious and permanent injuries and damages, and is entitled to damages, penalties, costs, and attorneys' fees, as set forth above, in ¶¶ 63–64, and punitive damages against Defendants WELLPATH, NAGAR, PURCELL, FERRARA and DOES 31–50, in their

1    individual capacities.

2                       **THIRD CAUSE OF ACTION**
     **(VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 (b) – BANE ACT)**
3    **PLAINTIFF AGAINST DEFENDANTS NAGAR, PURCELL, SOLATAN, MAIKE,**
                       **ALARCON, and DOES 1–50**
4
5    83. Plaintiff PUGH re-alleges and incorporates by reference each and every paragraph

6    contained in this Complaint, as if fully set forth here.

7    84. By their acts, omissions, customs, and policies, each Defendant, acting in

8    concert/conspiracy, as described above, interfered with, and/or attempted to interfere with, by

9    acting with a reckless disregard for DECEDENT's rights, and violated DECEDENT's rights

10   under California Civil Code § 52.1, by violating the following clearly established rights under

11   the United States Constitution and the California Constitution:

12          a.   DECEDENT's right to be free from deliberate indifference to his serious medical
                 needs while in custody as a pretrial detainee, as secured by the Fourteenth
13               Amendment to the United States Constitution and the California Constitution,
                 Article 1, Section 7;
14
15          b.   DECEDENT's right to be free from wrongful government interference with
                 familial relationships and DECEDENT's right to companionship, society, and
16               support of Plaintiff PUGH, his father, as secured by the First and Fourteenth
                 Amendments;
17
18          c.   DECEDENT's right to enjoy and defend life and liberty; acquire, possess, and
                 protect property; and pursue and obtain safety, happiness, and privacy, as secured
19               by the California Constitution, Article 1, Section 1;

20          d.   The right to protection from bodily restraint, harm, or personal insult, as secured
                 by California Civil Code § 43; and,
21
22          e.   DECEDENT's right to medical care, as required by California Government Code
                 § 845.6.

23   85. Alternatively, or concurrently, the threat, intimidation, and coercion described herein was

24   neither necessary nor inherent to Defendants' violation of DECEDENT's rights, nor to any

25   legitimate law enforcement activity.

26   86. Further, all of Defendants' violations of duties and rights and coercive conduct, described

27   herein, were volitional acts; none were accidental or merely negligent.

COMPLAINT FOR DAMAGES
*Daryl L. Pugh, Sr. et al. v. Wellpath LLC, et al.*
Case No.                            21

87. This claim is based on a violation of DECEDENT's rights, it is asserted as a survival claim.

88. The COUNTY is liable under California Government Code § 815.2 for injury proximately caused by an act or omission of an employee, committed within the course and scope of the employees' employment.

89. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of DECEDENT's rights under the United States and California Constitutions and law, Plaintiff PUGH sustained injuries and damages, and against each and every Defendant is entitled to relief as set forth above, in ¶¶ 63–64, and to punitive damages against the individual Defendants and DOES 1–50 in their individual capacities, including all damages allowed by California Civil Code §§ 52, 52.1, and California law, including costs, attorneys' fees, three times actual damages, and civil penalties.

### FOURTH CAUSE OF ACTION
### (NEGLIGENCE)
### PLAINTIFF AGAINST DEFENDANTS DOES 1–50

90. Plaintiff PUGH re-alleges and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

91. At all material times, Defendants DOES 1–50 owed DECEDENT the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

92. At all material times, each Defendant owed DECEDENT the duty to act with reasonable care.

93. These general duties of reasonable care and due care owed to DECEDENT by Defendants DOES 1–50 include, but were not limited to the following specific obligations:

    a. To provide, or have provided, prompt and timely access to appropriate treatment and safety from the grave danger he posed to herself;

    b. To provide safe and appropriate jail custody for DECEDENT, including reasonable classification, monitoring, and housing, including placing him on suicide watch with proper suicide precautions, and preventing access to physical conditions and items that could foreseeably be used for suicide;

c.  To summon necessary and appropriate medical care for DECEDENT;

d.  To use generally accepted law-enforcement and jail procedures that are reasonable and appropriate for DECEDENT's status as a mentally ill and/or emotionally disturbed person;

e.  To use generally accepted custodial health care and suicide prevention procedures that are reasonable and appropriate for DECEDENT's status as a mentally ill and/or emotionally disturbed person;

f.  To implement and/or enforce and/or properly execute drastically needed suicide-prevention policies, which COUNTY officials knew and/or had reason to know were needed;

g.  To properly classify, house, and/or monitor inmates suffering from substance abuse disorders, withdrawals, and mental-health disabilities, including placement on suicide watch with proper suicide precautions, and to not remove an inmate from a 5150 hold without a proper suicide risk assessment;

h.  To implement and/or enforce and/or properly execute an appropriate drug screening, detection, and search policy necessary to ensure the safety of people incarcerated in the Solano County Jail;

i.  To refrain from abusing their authority granted to them by law; and,

j.  To refrain from violating DECEDENT's rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

94. By the acts and omissions set forth more fully in the paragraphs above, Defendants DOES 1–50 acted negligently and breached their duty of due care, which foreseeably resulted in the suffering of damages by DECEDENT and Plaintiff PUGH.

95. Defendants DOES 1–50, through their acts and omissions, breached the aforementioned duties owed to DECEDENT and Plaintiff PUGH.

96. Defendant COUNTY is vicariously liable, pursuant to California Government Code section 815.2.

97. As a proximate result of Defendants' negligence, DECEDENT and Plaintiff PUGH sustained injuries and damages, and against each listed Defendant in this Cause of Action is entitled to the relief described above, in ¶¶ 63–64. Plaintiff PUGH also seeks punitive damages

against such individual Defendants in their individual capacities. Plaintiff PUGH does not seek punitive damages directly against the COUNTY.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff PUGH respectfully requests the following relief against each and every Defendant herein, jointly and severally:

a.  Compensatory damages in an amount according to proof and which is fair, just, and reasonable;

b.  Punitive damages against the individual Defendants, under 42 U.S.C. § 1983 and California law, in an amount according to proof and which is fair, just, and reasonable (punitive damages are not sought against Defendant COUNTY);

c.  Attorneys' fees and costs of suit under 42 U.S.C. § 1988;

d.  Attorneys' fees and costs of suit under California Civil Code §§ 52 (b)(3) and 52.1(h);

e.  All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988, California Code of Civil Procedure § 1021.5, California Civil Code §§ 52 et seq. and 52.1, and as otherwise may be allowed by California and/or federal law;

f.  For such other and further relief, according to proof, as this Court may deem appropriate, just, or proper.

Plaintiff PUGH hereby respectfully demands a jury trial, pursuant to Federal Rule of Civil Procedure 38, for all claims for which a jury is permitted.

Dated: July 25, 2023                 **HELM LAW OFFICE, PC**

T. KENNEDY HELM, IV
Attorney for Plaintiff

COMPLAINT FOR DAMAGES
*Daryl L. Pugh, Sr. et al. v. Wellpath LLC, et al.*
Case No.                 24